**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 3:21cr69** |
| | ) | **The Honorable John A. Gibney, Jr.** |
| **DE'NISHA WILSON,** | ) | |
| | ) | |
| *Defendant*. | ) | |

**Defendant's Objection to Presentence Report, Response to Request for
<u>Upward Variance, and Position on Sentencing</u>**

Ms. Wilson submits her objection to the presentence report, her response to the government's request for an upward departure, and her position on sentencing, asking that the Court impose a sentence of 12 months of home incarceration in this case. Pursuant to Rule 32 of the *Federal Rules of Criminal Procedure* and Section 6A1.3 of the advisory *United States Sentencing Guidelines* (USSG), Ms. Wilson, with the assistance of counsel, has received and reviewed the Presentence Report ("PSR") prepared in this case. She objects to the two-level enhancement under USSG § 2B1.1(b)(2)(A)(iii) for "substantial financial hardship." No accounting has been provided to demonstrate that the financial impact to Ms. Burwell, the victim, was substantial, as required under the law. Other than this objection, Ms. Wilson has no other amendments, corrections, or objections to the federal sentencing guidelines calculations in the PSR, or to any other facts or factors in the PSR. She also opposes the government's request for an upward departure.

Ms. Wilson comes before the Court as a result of her conviction for mail fraud, in violation of 18 U.S.C. § 1341, having pled guilty to that charge. Based on an offense level of 11 (considering a two-level reduction for the erroneous "substantial financial hardship"

1

enhancement), Criminal History Category ("CHC") II, Ms. Wilson's federal sentencing guideline range is 10-16 months. The defendant submits that under the facts and circumstances of the case, and the history and characteristics of Ms. Wilson, a sentence of 12 months of home incarceration is fair and reasonable in this case. This sentence is a within-guideline sentence, and is appropriate due to the mitigating circumstances in this case, which include the fact that Ms. Wilson's offense conduct in this case was prompted not by greed, but by an addiction to controlled substances that has been brought under control in the almost two years since the offense conduct in this case was concluded. *See* attached under seal psychological evaluation, Exhibit A. Upon law enforcement sending a target letter to Ms. Wilson, she very promptly accepted responsibility and pled guilty. Further, her criminal history consists of a single criminal offense episode for which she paid a very serious price – an eight-year sentence for an involuntary manslaughter conviction. *See* PSR ¶ 41.[1] The loss amount in this case was $13,357.07, of which she misappropriated $8,408.16, a relatively low loss amount in the spectrum of federal cases seen by this Court. *See* PSR ¶ 6. The offense conduct ended almost 2 years ago; since then, Mr. Wilson has lived a fully law-abiding life. She has a good job which she will lose if she is to serve any active time.

I. **Objection to "Substantial Financial Hardship" Enhancement**

Ms. Wilson objects to the two-level enhancement under USSG § 2B1.1(b)(2)(A)(iii) for "substantial financial hardship," as set forth in the presentence report at paragraph 29. With the enhancement, Ms. Wilson faces an offense level of 13, CHC II, and a guideline range of 15-21 months. Without the two-level enhancement, her guidelines drop to 10-16 months. The standard

---

[1] She was also convicted of an unlawful wounding charge for which she received an additional year of

2

for the "substantial financial hardship" enhancement envisioned under this guideline has not been met by the government. The government has failed to demonstrate that the victim, Ms. Burwell, suffered a hardship which qualifies for this two-level increase in Ms. Wilson's offense level.

Under USSG § 2B1.1(b)(2)(A)(iii), "[i]f the offense . . . resulted in substantial financial hardship to one or more victims, increase by 2 levels." Comment 4 to USSG §2B1.1(b)(2)(A)(iii) reads as follows:

> **(F) Substantial Financial Hardship.--**In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
>
> **(i)** becoming insolvent;
> **(ii)** filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
> **(iii)** suffering substantial loss of a retirement, education, or other savings or investment fund;
> **(iv)** making substantial changes to his or her employment, such as postponing his or her retirement plans;
> **(v)** making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
> **(vi)** suffering substantial harm to his or her ability to obtain credit.

None of these factors appear to apply, based on the information provided in the presentence report. *See* PSR ¶ 22. The presentence report refers to notes from a law enforcement interview with Ms. Burwell in September of 2021 that documents the financial consequences suffered due to Ms. Wilson's offense conduct. *See id.* and PSR, pp. 21-23. In those notes, none of the above factors are referenced or supported.

---

incarceration. The firearm charge was dismissed. *See* PSR ¶ 41.

3

The substantial financial hardship enhancement first appeared in the federal sentencing guidelines manual that took effect November 1, 2015. Prior to the November 2015 manual, no such enhancement existed under the federal sentencing guidelines. This provision was intended to address the extent of the harm to victims as well as the number of victims effected as the result of a fraud offense. *United States v. Howder*, 748 Fed.Appx. 637, 642 (6th Cir. 2018) (quoting *United States v. Poulson*, 871 F.3d 261, 267 (3d Cir. 2017)). The Third Circuit in *United States v. Poulson*, 871 F.3d 261 (3d Cir. 2017) found that "'substantial financial hardship' is subject to the usual—and significant—degree of discretion afforded a district court during sentencing."

In discussing the enhancement with the government, the government has indicated that the provision in the Commentary, (F)(v), applies because Ms. Burwell had to make substantial changes to her living arrangements; her two grandsons from her son could not be provided for and needed to move from the household. This scenario does not involve Ms. Burwell needing to relocate to another less expensive residence. This enhancement, which is relatively new to the guidelines, is intended to apply in the circumstances as set forth in the Commentary; those circumstances did not arise in this case.

Recently, a case from the Fourth Circuit (unpublished) described the proposed substantial financial hardship enhancement as follows:

> Amin also challenges the two-level enhancement that the court applied under USSG § 2B1.1(b)(2)(A)(iii) for an offense resulting in substantial financial hardship to one or more victims, arguing that the Government's evidence did not support a finding that the relevant victim suffered personal financial hardship. In determining whether to apply an enhancement for substantial financial hardship, a court should consider whether the offense resulted in a victim: becoming insolvent; filing for

> bankruptcy; suffering substantial loss of a retirement, education, savings, or investment fund; making substantial changes to their employment; making substantial changes to their living arrangements; or suffering substantial harm to their ability to obtain credit. USSG § 2B1.1 cmt. n.4.

*United States v. Amin*, 839 F. App'x 810, 811–12 (4th Cir. 2021). In *Amin*, the Fourth Circuit found that victims suffered "a substantial loss of their savings," a specific and clearly identified factor under the Commentary. *Id.* In this case, no changes were made with respect to Ms. Burwell's residence. She stayed in the same home. Requiring others who lived with her to move out of the residence has not been articulated by the drafters of the Commentary as a qualifying event to trigger the enhancement. Nor could counsel find any authority that would support this position.

There is no information indicating the amount of money that Ms. Burwell was deprived of in TANF and SNAP benefits from the time of her daughter's death until the time the children moved out of her residence and into their father's home. There is no accounting of expenses incurred by Ms. Burwell due to the two sons living with her, or the difference in expenditures in their absence. Ms. Burwell received gifts and assistance from generous friends and church members after she lost her daughter. There is no indication how much money she received from other sources to help with expenses upon her daughter's death. She was evidently reimbursed in full by the Department of Social Services for any payments she erroneously or improperly failed to receive. There is no indication when she received this money or to what extent it cured any financial hardship she may have suffered. With so many unanswered questions, the Court cannot make a finding of "substantial financial hardship."

Under Virginia Department of Social Services regulations, Ms. Burwell should have received any and all payments that were improperly denied to her due to Ms. Wilson's misconduct. *See* Virginia Department of Social Services TANF Manual, Chapter 503.9, Correction of Prior Underpayments, https://www.dss.virginia.gov/files/division/ bp/tanf/manual/ 500_7-20.pdf; Virginia Department of Social Services SNAP Manual, Restoration of Lost Benefits (7 CFR 273.17(a) and (b)), https://www.dss.virginia.gov/files/division/bp/fs/manual/ P16.pdf. Both of these manuals refer to "errors" of the agency that resulted in losses. To account for those "errors," the agency is required to "provide for restoration of lost benefits" or that there is a "correction of the prior underpayment by repayment to the client." *Id*; *see* attached Ex. B, applicable pages from the TANF and SNAP manuals. Consequently, any financial hardship to Ms. Burwell due to Ms. Wilson's offense conduct should have been promptly corrected by Virginia DSS upon discovery.

There is no question that this is a serious offense, and that Ms. Burwell suffered a financial consequence as a result of Ms. Wilson's offense conduct. However, there is insufficient evidence produced to meet the standard of "substantial financial hardship," as articulated in the guidelines, especially in the absence of evidence that Ms. Burwell was forced to move out of her residence and that she likely received full compensation for her losses by the Commonwealth of Virginia. For these reasons, the two-level enhancement should not be applied in this case. Consequently, Ms. Wilson's offense level should be reduced to 11, and her guideline range should be 10-16 months.

## II. Response to Government Request for Upward Variance

The facts and circumstances of this case, as well as the history and characteristics of Ms. Wilson, do not justify a sentence above the high end of the federal sentencing guidelines, either as calculated in the presentence report (15-21 months), or as suggested by the defendant based on the objection to an enhancement for "substantial financial harm" (10-16 months). In addition to the very low loss amount in this case, Ms. Wilson's prompt acceptance of responsibility, and her addiction issues, a significant unwarranted disparity would be created if this Court imposed a sentence above the calculated guidelines, in violation of 18 U.S.C. § 3553(a)(6).

"[N]ational sentencing data released by the [Sentencing] Commission should serve as a starting point for district judges in their efforts to avoid unwarranted sentence disparities" under § 3553(a)(6). *United States v. Boucher*, 937 F.3d 702, 713 (6th Cir. 2019) (quoting *United States v. Stock*, 685 F.3d 621, 629 n.6 (6th Cir. 2012). Here, the data promulgated by the Sentencing Commission indicates that even a within-guidelines sentence could be viewed as excessive. Counsel has reviewed the national sentencing data from the past five years, and applied the following filters to narrow the set of cases to those defendants with similar crimes and enhancements, identical criminal history scores, and identical sentencing guideline ranges, "who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).[2]

---

[2] The Sentencing Commission Data is available at https://www.ussc.gov/research/datafiles/commission-datafiles. Counsel can provide a copy of the data in Microsoft Excel format for the Court and opposing counsel upon request. The codebook, which explains the meaning of each variable, is available at https://www.ussc.gov/sites/default/files/pdf/research-andpublications/datafiles/USSC_Public_Release_Codebook_FY99_FY18.pdf.

For offenders in the federal courts who, over the past five years, have been (1) convicted of crimes designated under USSG § 2B1.1; (2) with a guideline range of 10-16 months; (3) who have been subjected to an enhancement for abuse of position of trust; and (4) who have a Criminal History Category of II, the data search produced four defendants who fit this criteria.[3] All of those defendants were sentenced to no active time; they were all sentenced to probation. By increasing the variables to reflect a guideline range of 15-21 months, as provided in the presentence report, the data search produced 14 defendants. The average sentence for these 14 defendants was 12.6 months.

Thus, the resulting set of cases include those very similar with respect to critical factors listed under the guidelines, namely, fraud offense, guideline range, criminal history, and abuse of position of trust. The average sentence imposed on these similarly situated defendants with guideline ranges of 10-16 months was well below the guidelines range – probation - for all four defendants; for guideline ranges of 15-21, the average sentence was also below the guideline range at just over 12 months. For the group with a guideline range of 15-21 months, half were below the guideline range. A majority of the cases - 10 of 14 (71%) - were sentenced at or below the low end of the guidelines. Only one sentences was above the high end of the guidelines, at 26 months. Therefore, in order to impose a sentence above the guidelines as the government requests, while avoiding unwarranted sentence disparities, the Court would have to conclude that Ms. Wilson was, by far, the worst of the worst fraud offenders who present very similar offense conduct in the 10-16 month guideline range, and among the worst among the defendants in the

---

[3] The search criteria did not include the "use of personal identifying information" enhancement under USSG § 2B1.1(b)(11)(A)(ii), PSR ¶ 30, or the "substantial financial harm" enhancement under USSG § 2B1.1(b)(11)(A)(iii), PSR ¶ 29 because a search with those variables did not produce sufficiently

15-21 month range. Her loss amount, however, is the lowest of all defendants noted. And loss amount is the most significant driver of fraud offense sentences under the § 2B1.1 guidelines.

Thus to impose an above-guidelines sentence to the extent requested by the government would introduce an unwarranted disparity between Ms. Wilson and a vast majority of defendants guilty of similar conduct with similar records. The data supports a sentence below the guidelines.

### III. Sentencing Factors under 18 U.S.C. § 3553(a)

After considering the appropriately-calculated advisory guideline range, courts are to consider all the factors under 18 U.S.C. § 3553(a) in reaching the appropriate, individualized sentence for the particular case. *See Gall v. United States*, 552 U.S. 38, 49 (2007); *Kimbrough v. United States*, 552 U.S. 58, 90 (2007).

In addition to the advisory guideline range, the other factors that a court must consider when determining an appropriate sentence include the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment, *id.* at § 3553(a)(2); the kinds of sentences available, *id.* at 3553(a)(3); the need to avoid unwarranted disparity among defendants with similar records and conduct, *id.* at § 3553(a)(6); and the need to provide any restitution to any victims of the offense, *id.* at § 3553(a)(7). Pursuant to 18 U.S.C. § 3553(a), courts must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

---

comparable results, Additionally, the "substantial financial harm" enhancement may not be applicable.

## IV. Discussion of the facts related to the § 3553(a) factors

Attached to this sentencing position as Exhibit A is an under-seal psychological evaluation of Ms. Wilson conducted by Dr. Brandi Bartlett of Woodbridge Psychological Associates, P.C. in Woodbridge, Virginia. This evaluation provides a history of Ms. Wilson, a view of her psychological profile and addiction condition, and a discussion of the circumstances in her life leading up to the offense conduct. The information in the report is not presented as an excuse for Ms. Wilson's conduct, but as an explanation of the influences and issues present in her life at the time of the offense conduct.

As presented in the report, Ms. Wilson's parents were teenagers in high school when she was born. Ex. A at 2; PSR ¶ 48. When her mother left for college, Ms. Wilson was very young and was left in the care of her grandparents. Ex. A at 2; PSR ¶ 48. She only saw her father a few times in her life. *Id.* Ms. Wilson's grandmother raised her, but died when Ms. Wilson was 8 years of age. Her young childhood with her grandmother was very loving and caring. This changed when her grandmother died. Due to the death of her grandmother, Ms. Wilson's mother returned to Martinsville from Richmond to care for Ms. Wilson and her sister. Losing her grandmother presented a profound and lasting impact on Ms. Wilson, a loss from which she never recovered. Ex. A at 4.

Dr. Bartlett's report documents Ms. Wilson's early adult years which involved an abusive relationship with a man that led to Ms. Wilson's convictions in 1998. *See* Ex. A at 6; PSR ¶ 41. Ms. Wilson was regrettably involved with a man who treated Ms. Wilson very poorly. This relationship led to a series of altercations, one of the last of which involved some women who had assaulted Ms. Wilson. One of the women was having an affair with Ms. Wilson's boyfriend.

Ms. Wilson was carrying a gun and used the gun in self-defense. *See* attached Exhibit D, Letter from Ms. Wilson's sister. A woman who was a companion to Ms. Wilson's boyfriend was killed. The charges, convictions, and prison sentences imposed in Martinsville Circuit Court arose from this series of altercations involving Ms. Wilson's toxic relationship of several years with her former boyfriend. PSR ¶ 41.

Additionally, Ms. Wilson was using cocaine during the period of time that these charges in Martinsville arose in 1998. Ex. A at 6. She started using cocaine when she was 18 and continued using until the offense conduct in 1998 when she was 23 years of age. *Id*. at 6-7. Ms. Wilson's dependence on cocaine - and a toxic relationship with a man - also led to the charges in this case. *Id*. at 9.

Ms. Wilson discussed in detail with Dr. Bartlett the facts and circumstances that led to the offense conduct in this case. She talked about her relationship with a man and their addiction to cocaine. Ex. A at 9. After her supervised probation period had ended in the Martinsville case, Ms. Wilson started using cocaine again in 2009 with her new boyfriend, and continued using cocaine on and off for the next several years. *Id.* She was using cocaine and supporting her own habit as well as the habit of her boyfriend. *Id.* Without sufficient funds to support her cocaine use, she made the very regrettable choice to misappropriate the money intended for the care of Ms. Shakeira Burwell's children; she used the money to help fund her and her boyfriend's cocaine addiction. At the time of the offense conduct she was using cocaine on a daily basis. *Id*.

Ms. Wilson has received treatment for her addiction and has not used illegal substances since the offense. Dr. Bartlett describes Ms. Wilson's addiction problem as a "severe Stimulant Use Disorder." Ex. A at 12. To this day, she is actively involved in Narcotics Anonymous and is

11

in regular contact with her sponsor. She is also presently enrolled in a treatment program, Envision Counseling, and her substance abuse counselor has provided a letter to the Court describing her treatment. *See* attached Exhibit C, Letter from Gerald Hayes. Mr. Hayes writes in his letter that Ms. Wilson's involvement with the program is "100% compliant, cooperative, and maintain[s] abstinence from all illicit drugs." He goes on to state that Ms. Wilson "has learned decision making techniques to ensure she makes wise decisions. She is a very genuine individual who is taking treatment seriously by completing personality profile, homework assignments on assertiveness, and life choices." *Id*. This treatment program has been extremely valuable to Ms. Wilson in fighting her addiction issues.

Dr. Bartlett also addressed Ms. Wilson's mental health concerns. She explained that, "Ms. DeNisha Wilson presents as a bright but emotionally vulnerable woman who has likely experienced Social Anxiety Disorder since childhood." Ex. A at 12. She also suffers from "persistent depressive symptoms and a marked fear and anxiety of social situations in which she may be scrutinized by others." *Id.; see also* PSR ¶ 54. Dr. Bartlett specifically attributes Ms. Wilson's criminal conduct in this case to "longstanding symptoms of depression/anxiety and to her cocaine addiction. Although Ms. Wilson could be sentenced to a period of incarceration, all available information suggests that she is more likely to benefit from treatment options targeted at improving her functioning." *Id*. This is one of several reasons why the Court should impose a a sentence of home confinement rather than active incarceration.

Another reason for a sentence of home incarceration is to preserve Ms. Wilson's present employment situation. She is working at DuPont Specialty Products in Richmond, and she is earning almost $20 an hour. PSR ¶ 60. She had been working as a Community Case Manager for

a company called Home Again earning $45,000 per year; however, she was forced out of this position when she was required to inform her employer of her federal prosecution. *See* PSR ¶ 61. Without her present employment, it will be difficult to maintain restitution payments.

Finally, Ms. Wilson has her addiction situation under control with a treatment program that has proven effective. *See* Ex. C. Removing her from the community would interfere with the progress she has made with her recovery.

Ms. Wilson deeply regrets the conduct she engaged in and is prepared to suffer the consequences of her actions. She has learned an important lesson through this experience. The Court can sentence Ms. Wilson with confidence that she is highly unlikely to engage in any criminal conduct in the future.

Ever since the offense conduct ended in this case, which was nearly two years ago, Ms. Wilson has returned to a life of a hard-working, law-abiding citizen. Ms. Wilson has accepted full responsibility for her actions in this case, and promptly agreed to plead guilty. Although the offense is serious, she has demonstrated sincere remorse. Although not as restrictive as active incarceration, home incarceration is a serious restriction on a person's liberty. Ms. Wilson will be required to pay restitution and she will be under the supervision of a federal probation officer. Ms. Wilson has strong support from family and friends in the community. *See* Ex. C.

Under all of these facts and circumstances, a sentence of 12 months of home incarceration constitutes a significant and sufficient punishment, but is not greater than necessary to accomplish each objective of 18 U.S.C. § 3553(a). This sentence is consistent with the nature and circumstances of the offense and the history and characteristics of Ms. Wilson, 18 U.S.C. § 3553(a)(1); it is appropriate with respect to the need for the sentence to reflect the seriousness of

the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment, as required under § 3553(a)(2) and as explained at length above; it is a just outcome in consideration of the kinds of sentences available, 3553(a)(3); and it does not present the Court with any unwarranted disparities among defendants with similar records and conduct, § 3553(a)(6). Ms. Wilson will pay full restitution for the funds she misappropriated, as agreed upon by the parties in the plea agreement.

### V. Conclusion

For the reasons discussed herein, Ms. Wilson asks that this Court impose a sentence of 12 months of home incarceration, and order that Ms. Wilson pay the agreed-upon restitution amount. Based on the mitigating circumstances of the case, especially her addiction and mental health issues, and her prompt agreement to plead guilty and accept responsibility, such a disposition is fair and reasonable in this case.

Respectfully submitted,
**De'nisha Wilson**

By: /s/
Robert J. Wagner, PLC
Va. Bar No. 27493
101 Shockoe Slip, Suite J
Richmond, VA 23219
(804) 814-8172
robwagnerlaw@gmail.com